UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEYMI DAYAN MORALES,

                  Petitioner,

    v.

JULIO HERNANDEZ et al.,

                  Respondents.

CASE NO. 2:26-cv-01686-DGE

ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS
(DKT. NO. 1)

Before the Court is Petitioner Jeymi Morales's petition for writ of habeas corpus.  (Dkt. No. 1.)  Having reviewed the petition, the return memorandum (Dkt. No. 6), the traverse (Dkt. No. 9) and all supporting materials, the Court GRANTS the petition.

## I      BACKGROUND

### A. Background Facts

On May 14, 2022, Petitioner, a citizen and national of Nicaragua, entered the United States with her one-year-old son without inspection or parole.  (Dkt. Nos. 2 at 2; 3-1 at 5.)  Petitioner was subsequently apprehended by Border Patrol agents and transported to a processing

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 1

center in Arizona.  (Dkt. Nos. 3-1 at 5; 7 at 2.)  On May 15, 2022, Petitioner was released on parole pursuant to Immigration and Nationality Act ("INA") § 212(d)(5), codified at 8 U.S.C. § 1182(d)(5), under an Alternative to Detention program "due to lack of space at the detention center." (Dkt. Nos. 7 at 2; 8-2 at 2.)  Petitioner's parole expired on July 15, 2022.  (Dkt. No. 8-2.)  Enforcement and Removal Operations ("ERO") Deportation Officer Kurtis Reed identifies that Petitioner's parole was not renewed.  (Dkt. No. 7 at 2.)  Notwithstanding, Petitioner remained at liberty until her detention in November 2025.  (Dkt. No. 2 at 3; 7 at 2.)

After her release in May 2022, Border Patrol provided Petitioner a phone to submit photographs of herself once a week, a requirement Petitioner complied with.  (Dkt. No. 2 at 2.)  Petitioner also complied with attending scheduled appointments with Immigration and Customs Enforcement ("ICE").  (*Id.*)  After two years, Petitioner returned the phone to Respondents.  (*Id.*)

Upon her release on parole, Petitioner began residing in Broward County, Florida with her son and began building a life.  (*Id.*)  Petitioner married in April 2023, enrolled her son in school, and gave birth to two additional children in August 2023 and December 2024.  (*Id.*)  Her two children born in the United States each suffer from significant health issues.  The older one is autistic and suffers from "[d]evelopmental delay, [l]ow muscle tone, and [s]peech delay." (Dkt. No. 3-1 at 19.)  The younger one was diagnosed with congenital hypothyroidism.  (*Id.*)  Petitioner is the primary caregiver to her children, and they rely on her for daily necessities including attendance at medical appointments.  (Dkt. No. 2 at 3.)

On February 28, 2025, Petitioner was issued a Notice to Appear charging her as a noncitizen "present in the United States who has not been admitted or paroled" pursuant to 8

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 2

U.S.C. § 1182(a)(6)(A)(i).[1] (Dkt. No. 8-1 at 2.) She was scheduled to appear for a hearing before the Orlando Immigration Court on December 17, 2025. (*Id.*)

On November 11, 2025, Petitioner was arrested in Florida for first degree misdemeanor battery. (Dkt. Nos. 3-1 at 5; 7 at 2.) Petitioner describes her husband as "an alcoholic" who "would get violent with [her]." (Dkt. No. 2 at 3.) She further asserts she was arrested because her husband called law enforcement and lied about her attempting to grab his phone without permission. (*Id.*) Respondents assert the misdemeanor charge remains pending (Dkt. No. 7 at 3), while Petitioner asserts the matter was dismissed because her "husband testified at [the first] hearing and told the court that he was lying" (Dkt. No. 2 at 3).

While in state custody, ERO Miami issued an immigration detainer and took custody of Petitioner on November 12, 2025. (Dkt. Nos. 7 at 2; 8-3 at 3.) On December 27, 2025, Petitioner was transferred to an immigration processing center in California. (*Dkt. No. 7 at 2.*) On January 22, 2026, Petitioner was transferred to the Northwest ICE Processing Center ("NWIPC"), where she remains today. (Dkt. No. 7 at 2–3.) Petitioner identifies that prior to arriving at the NWIPC, she was transferred approximately eight times, during which she asserts she was subjected to numerous strip searches and inhumane conditions at different jails and holding locations.[2] (Dkt. Nos. 2 at 4–5; 1 at 7–9.)

Petitioner attests she received three hearings since being detained at NWIPC. (Dkt. No. 2 at 6.) On March 26, 2026, the Tacoma immigration court denied Petitioner's request for asylum and withholding of removal and ordered her removed to Nicaragua. (Dkt. No. 7 at 3.) On April

---

[1] The order identifies INA § 212(a)(6)(A)(i), which is codified at 8 U.S.C. § 1182(a)(6)(A)(i).

[2] Dr. Angela Godoy, the founding director of the University of Washington Center for Human Rights, identified that Petitioner was held at 10 different facilities and transferred 14 times. (Dkt. No. 10 at 1–2, 5.)

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 3

17, 2026, Petitioner appealed the decision to the Board of Immigration Appeals, where it remains pending.  (Dkt. Nos. 7 at 3; 8-4 at 2–5.)

**B.  Procedural Facts**

On May 17, 2026, Petitioner filed her petition for writ of habeas corpus.  (Dkt. No. 1.) The Court entered its general scheduling order, which required Respondents to submit a response by June 1, 2026, and Petitioner to submit a traverse by June 8, 2026.  (Dkt. No. 4.)  The Parties timely filed their briefing.  (*See* Dkt. Nos. 6, 9.)

## II      LEGAL STANDARD

**A.  Habeas Petitions**

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on her habeas petition, Petitioner "must show she is in custody in violation of the Constitution or laws or treaties of the United States."  *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'"  *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III      ANALYSIS

Petitioner asserts two claims: (1) Respondents re-detained Petitioner in violation of the Due Process Clause of the Fifth Amendment, and (2) her detention has become punitive.  (Dkt. No. 1 at 9–17.)

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 4

**A. Parole and Due Process Liberty Interest**

It is undisputed that the United States Department of Homeland Security ("DHS") paroled Petitioner into the United States in May 2022. (Dkt. No. 8-2 at 2.) 8 U.S.C. § 1182 provides that the Secretary of Homeland Security may, in their discretion, parole a noncitizen seeking admission into the United States under such conditions as they may prescribe "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). "[S]uch parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled[.]" *Id.*

Parole may be terminated either automatically or with notice. *See* 8 C.F.R. § 212.5(e). Parole is *automatically* terminated without written notice "at the expiration of the time for which parole was authorized" and the noncitizen "shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required." 8 C.F.R. § 212.5(e)(1)(ii). Paragraph (e)(2) states in part that the noncitizen "shall be restored to the status that he or she had at the time of parole." *Id.* § 212.5(e)(2)(i). To *revoke* parole, in turn, (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States"; and (2) written notice must be provided to the noncitizen. *Id.* (upon accomplishment of the purpose for which parole was authorized or in the opinion of one of the officials that neither humanitarian reasons nor public benefits warrants continued presence, "parole shall be terminated upon written notice to" the noncitizen).

Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) because her parole expired in July 2022 and was never renewed.  (Dkt. No. 6 at 1.) Thus, according to Respondents, Petitioner must return to the custody from which she was paroled.  (*Id.* at 3–5); *see also Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018); *Matter of Castillo-Padilla*, 25 I. & N. Dec. 257, 259 (BIA 2010) ("After the purpose of the parole has been served, the [noncitizen] returns to custody, and his or her case is dealt with in the same manner as any other applicant for admission.").  However, the Court need not decide the statutory framework under which Petitioner may or may not be detained, because the INA "cannot replace the constitutional requirement of procedural due process."  *Singh v. Noem*, No. 2:26-CV-00555-RAJ, 2026 WL 686135, at *2 (W.D. Wash. Mar. 11, 2026).  The Due Process Clause applies to Petitioner regardless of whether she is subject to detention under § 1225(b)(1), § 1225(b)(2), or § 1226(a).[3]  The Court therefore turns to Petitioner's due process claim.

---

[3] *See, e.g.*, *Osuna Benitez v. Hermosillo*, Case No. 2:25-cv-02535-BAT, 2025 WL 3763932, at *3 (W.D. Wash. Dec. 30, 2025) (citing *Zadvydas*, 533 U.S. at 693); *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (quoting *E.A. T.-B v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025)) ("[T]he fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'"); *Blanco v. Hermosillo*, Case No. C26-493-MLP, 2026 WL 548056, at *2 (W.D. Wash. Feb. 27, 2026) ("Courts have held that noncitizens paroled or released from § 1225(b) custody retain a protected liberty interest in continued release and are entitled to procedural safeguards before being returned to custody, regardless of whether § 1225(b)(1) or (b)(2) applies."); *Reyes v. Hermosillo*, Case No. 2:26-cv-00270-TLF, 2026 WL 507678, at *2 (W.D. Wash. Feb. 24, 2026) ("[T]he Court need not consider whether there is a statutory basis . . . upon which petitioners may be lawfully detained . . . because even assuming a statute permits government detention of an individual, the Due Process Clause may provide procedural protections not found in the statute."); *P.T. v. Hermosillo*, Case No. C25-2249-KKE, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected."); *Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026

**B. Petitioner's Re-Detention Violates Due Process.**

The Due Process Clause of the Fifth Amendment protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))).

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." 424 U.S. at 335.

1. Private interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Courts have continually recognized an immigration detainee's private

---

WL 686138, at *6 (W.D. Wash. Mar. 11, 2026) ("The Court clarifies that the Due Process Clause applies to Petitioners—who were deprived of their liberty when ICE revoked their release and re-detained them— regardless of whether they are subject to detention under Section 1225(b)(1), Section 1225(b)(2), or Section 1226(a)").

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 7

interest in freedom from imprisonment. *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–1094 (E.D. Cal. 2025) (concluding the lengthy duration of the petitioner's conditional release and the meaningful connections the petitioner made with his community during that time "create[d] a powerful interest for [the petitioner] in his continued liberty").

Respondents argue that Petitioner's prior temporary parole confers upon her a lesser liberty interest. (Dkt. No. 6 at 7.) However, even individuals such as Petitioner who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."); *Hurd v. D.C., Gov't*, 864 F.3d 671, 683–684 (D.C. Cir. 2017) (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Morrissey*, 408 U.S. at 482. Courts in this district have consistently concluded that an individual such as Petitioner who has been released on parole under § 1182(d)(5)(A) and has lived with relative freedom in the United States for a number of years, has a protected interest in not being detained.

*See Dieng v. Hermosillo*, No. 2:26-CV-00190-LK, 2026 WL 411857, at *3–5 (W.D. Wash. Feb. 13, 2026); *Zavorin v. Wamsley*, No. 2:26-CV-00173-DGE, 2026 WL 309733, at *2–3 (W.D. Wash. Feb. 5, 2026); *Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at* 3–5 (W.D. Wash. Jan. 20, 2026); *Ramirez Tesara*, 800 F. Supp. 3d at 1136.  District courts in the Ninth Circuit have also recognized that a "petitioner's liberty interest [does] not expire along with his parole." *Quiroga-Chaparro v. Warden of the Golden State Annex. Det. Facility*, No. 1:25-CV-1731 AC, 2025 WL 3771473, at *5 (E.D. Cal. Dec. 31, 2025).  In other words, where a noncitizen is allowed to remain at liberty even after parole has expired by its own terms, the noncitizen's liberty interest remains.

Here, Petitioner has a strong liberty interest in remaining free from detention.  After her release on parole in May 2022, she began living with her one-year-old child in Broward County.  (Dkt. No. 2 at 2.)  Petitioner subsequently married and gave birth to two additional children, both of whom suffer from significant health issues.  (*Id.* at 2–3.)  Petitioner is the primary caregiver for her children, who depend on her for basic daily needs and for attendance of medical appointments.[4]  (*Id.*)  She and her children became part of their community.  Her liberty interest continued to exist despite her initial conditional release, and it must be afforded substantial

---

[4] Through their own internal policy, Respondents acknowledge the strong liberty interest a parent has in maintaining a parental relationship with their children.  Their own guidance identifies the need to "ensure the agency's enforcement actions do not unnecessarily infringe upon the legal parental . . . rights and obligations of" parents who are "primary caretakers of minor child(ren)." ICE DIR. TODD LYONS, *ICE Directive 11064.4: Detention and Removal of Alien Parents and Legal Guardians of Minor Children*, ICE, 1, 1 (July 2, 2025), https://www.ice.gov/doclib/foia/policy/11064.4.pdf.  Respondents are required to prioritize placing a detained noncitizen parent at a location closest to their dependent minor children.  *Id.* at 5–6.  As if in complete disregard of their own policy, Respondents transferred and eventually placed Petitioner in a detention center that is virtually the farthest away from her children that Respondents could have transferred her to.  Respondents' transfer and detention decisions in this matter have been far from compassionate and could even be characterized as cruel.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 9

weight.  *Doe*, 787 F. Supp. 3d at 1093 (collecting cases).  Respondents' assertion that Petitioner is detained under § 1225(b) paints an incomplete picture of the circumstances and does not negate Petitioner's liberty interest.  *See Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1099–1100 (E.D. Cal. 2025) (collecting cases finding petitioners whose humanitarian parole had expired retained a liberty interest).  Petitioner's private interest in her continued liberty means the first *Mathews* factor weighs heavily in her favor.

    2.  <u>Risk of erroneous deprivation of interest through procedures used</u>

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]"  *Mathews*, 424 U.S. at 335.  Here, the risk of an erroneous deprivation without any hearing is high.

Respondents assert Petitioner's re-detention was justified because she is subject to § 1225(b), her parole had expired, and she was arrested for misdemeanor battery.  (*See* Dkt. No. 6 at 3–7.)  However, as explained above, Petitioner was entitled to due process regardless of the mandatory detention provisions contained in § 1225(b).  Moreover, Petitioner's I-213 form (*see* Dkt. No. 8-3 at 3) does not allege Petitioner was re-detained because her parole had expired— thus, Respondents cannot use the expiration of parole as a justification to continue detaining Petitioner.  And, while Petitioner was arrested for misdemeanor battery, the Parties dispute whether that matter has been dismissed and, based on Petitioner's description of the events, it is questionable whether law enforcement had a sufficient basis to arrest Petitioner in the first place.  Furthermore, almost three years after Petitioner's parole expired, Respondents issued Petitioner a Notice to Appear and scheduled her to appear before an immigration court without requiring her detention—meaning that Respondents and the immigration court believed she was neither a

flight risk nor posed a danger to the community.  (*See* Dkt. No. 8-1 at 2.)  Lastly, Respondents have not identified any *contemporaneous* opportunity afforded to Petitioner to challenge the government's justification for her re-detention or its factual underpinnings.  *Reyes v. Hernandez*, No. 2:26-CV-00633-GJL, 2026 WL 820481, at *4 (W.D. Wash. Mar. 25, 2026)

Thus, based on the circumstances presented, there is strong risk that Petitioner was erroneously deprived of her liberty.  Accordingly, the second *Mathews* factor favors Petitioner.

3.   Government's interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

Admittedly, Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas*, 533 U.S. at 690.  And although requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient.  The Court acknowledges that Respondents have an interest in returning to custody noncitizens who engage in criminal behavior, but nothing prevented ICE from scheduling a hearing upon becoming aware of her arrest record.  *See E.A. T.-B.*, 795 F. Supp. 3d 1323.

In sum, all three *Mathews* factors favor Petitioner.  Respondents' detention of Petitioner violates the due process protections afforded to her by the Constitution.  Petitioner has proven by

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 11

a preponderance of the evidence that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).[5]

## C. Respondents Must Follow the Law Before Re-Detaining Petitioner

Having found due process violations, the Court further finds that issuing the requested injunctive relief is appropriate. Each of the four *eBay* factors supports this conclusion. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

A party "seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* Petitioner has satisfied the requirements for a permanent injunction. She suffered irreparable harm, through the violation of her constitutional right to due process and more than seven months of unlawful detention. She has been separated from her family for over seven months, causing her young children significant hardship. (*See generally* Dkt. No. 1.) No monetary remedy can compensate for the deprivation of physical liberty. The balance of hardships favors Petitioner, as the injunction requires only that Respondents comply with the Constitution before re-detaining her. And the public interest is served by an order prohibiting Respondents from violating the Due Process Clause.

Petitioner has also established a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633

---

[5] Petitioner also argues that Respondents violated the Due Process Clause by subjecting her to unconstitutionally punitive conditions. (Dkt. No. 1 at 14, 21.) Because the Court grants Petitioner relief on Count One, the Court does not reach this argument.

(1953)).  ICE has already detained her without due process, raising concerns that, absent injunctive relief, she may be subject to the same due process violation again.  Several courts in this district have granted similar relief under comparable circumstances.  *See, e.g.*, *Nguyen v. Bondi*, No. 2:25-cv-02723-RAJ, 2026 WL 183819, at *6 (W.D. Wash. Jan. 23, 2026); *Wana v. Bondi*, No. 2:25-cv-02321-RSL, 2025 WL 3628634, at *6 (W.D. Wash. Dec. 15, 2025) (prohibiting re-detention without notice and hearing); *Tzafir v. Bondi*, No. 25-cv-02067-JHC-SKV, 2026 WL 74088, at *5 (W.D. Wash. Jan. 9, 2026) (same); *Yuksek v. Bondi*, No. 25-cv-02555-DGE-GJL, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (same); *Do v. Scott*, No. C25-2187-RSL, 2025 WL 3496909, at *6 (W.D. Wash. Dec. 5, 2025) (prohibiting re-detention without valid travel document and other specified conditions).

Accordingly, the Court prohibits Petitioner's re-detention unless Respondents first provide written notice of the basis for the proposed re-detention and an immigration court hearing is held to determine whether detention is appropriate.

## IV    CONCLUSION

Accordingly, the Court GRANTS Petitioner's petition for writ of habeas corpus.  (Dkt. No. 1.)  The Court further ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf of in concert with them SHALL release Petitioner from custody subject to reasonable conditions of supervision within **TWENTY-FOUR (24) HOURS** of this Order.  Also within **TWENTY-FOUR (24) HOURS**, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody.

2. Petitioner SHALL NOT be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 13

to be heard in front of an immigration judge.[6]  The Court concludes that neither Petitioner's November 11, 2025 arrest nor the expiration of her parole on July 15, 2022 establish urgent circumstances or a clear legal basis for detention without first providing a pre-deprivation notice and hearing.

3. Petitioner seeks an award of fees.  (Dkt. No. 1 at 22.)  Petitioner is GRANTED leave to file a motion for attorney fees.  The motion for fees shall identify the legal authority supporting the award of fees and shall be filed **no later than September 16, 2026.**  The Parties are strongly encouraged to meet and confer regarding fees before Petitioner files a motion for attorney fees.

The Clerk is directed to calendar this event and close the matter.

Dated this 18th day of June, 2026.

David G. Estudillo
United States District Judge

---

[6] The Court presumes Petitioner will return to Broward County, Florida where her children and family reside.  In the event Petitioner is re-detained after her release pursuant to this Order, any claim by Petitioner that she has been unlawfully re-detained in violation of this Order shall be presented as a new habeas petition in the district where Petitioner may be located.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 14